INTERNATIONAL TELEPHONE AND
TELEGRAPH CORPORATION, Plain-
tiff-Appellant Cross-Appellee,

v.

UNITED TELEPHONE COMPANY OF
FLORIDA, Defendant-Appellee
Cross-Appellant.

No. 75–3780.

United States Court of Appeals,
Fifth Circuit.

April 8, 1977.

Peter J. Winders, Tampa, Fla., Grant S. Lewis, New York City, Maxwell M. Blecher, Los Angeles, Daniel R. Solin, New York City, Cromwell A. Anderson, Miami, Fla., for defendant-appellee-cross-appellant.

Warren E. Baker, Shawnee Mission, Kan., Edwin L. Mason, Tallahassee, Fla., Lawrence Kill, Jerold Oshinsky, New York City, John F. Germany, Tampa, Fla., for plaintiff-appellant-cross-appellee.

Before MORGAN and FAY, Circuit Judges, and HUNTER,* District Judge.

PER CURIAM:

Plaintiff, International Telephone and Telegraph Corporation (ITT), and defendant, United Telephone Company of Florida (United), appeal the dismissal of all claims and counterclaims by the district court after a trial to the judge on the merits. Both parties assign a myriad of errors but we find them to be without merit and affirm in toto the judgment of the district court.

ITT, is, among other things, a manufacturer and distributor of telephone equipment. United is an operating telephone company enfranchised by the State of Florida to furnish exclusive telephone service to subscribers within an area comprising thirteen counties including the cities of Fort Myers and Tampa.

ITT claims United unlawfully used its monopoly power by stifling competition in the sale and distribution of telephone equipment in violation of Section 2 of the Sher-

* Senior District Judge of the Western District of Louisiana, sitting by designation.

man Act.[1] ITT asserts United caused the cancellation of a sales contract of ITT for telephone equipment as a result of anticompetitive motivations; in particular, the filing of a "sham" complaint with the Florida Public Service Commission.

This controversy involves a proposed telephone system for an extensive real estate development in Fort Myers called Shell Point Village (the Village). This 75-acre development was established as a retirement community which also has lodging, shopping and other facilities open to the general public including a 200-room motel, a restaurant and a marina. A communications system was needed which would permit internal telephone calls between the many component units of the Village and between them and points outside the Village. ITT offered a solution through the use of central office equipment it would supply. This equipment was intended to permit intra-state and interstate communications by telephone through an interconnection with the licensed system of United.[2]

The Village was not a telephone company and had no required certificate from the State of Florida, therefore, it could not sell telephone services to its residents (except for internal communications).[3] This would constitute the use of customer owned equipment to resell telephone services to others. The proposed installation at the Village could only be made operative by interconnecting with United's trunk lines and general facilities, therefore, United in its best interest attempted to determine whether Florida law was being followed.

United filed a complaint with the Florida Public Service Commission on July 24, 1970 alleging its belief that the Village's proposed telephone system would involve resale of services without a certificate in contravention of statute and in violation of United's tariff. United also notified the Commission by letter that because some of the contemplated uses of the telephone system were lawful it believed it was obliged to interconnect and was ready to do so, seeking an order from the Commission only as to the unlawful conduct.

On August 7, 1970, the Commission issued a show cause order against the Village and the Village did not respond. However, on September 9, 1970, the Village filed an answer wherein it denied its telephone services would be "for hire" and moved to dismiss the complaint. This motion was denied. On November 20, 1970, the Commission granted intervention to ITT in support of the Village and also to General Telephone Company of Florida, Florida Telephone Corporation and Southern Bell Telephone and Telegraph Company in support of United. A week later ITT filed its answer denying that the telephone system which it proposed to sell the Village would be used for resale of services and moving to dismiss United's complaint. This motion was also denied. Neither the Village nor ITT sought review of the show cause order or the denials of their motions. ITT failed to put before the Commission any of the factual matters or legal theories it placed before the district court and on April 7, 1972, was dismissed as an intervenor because its contract with the Village, which was the basis for the intervention, had been cancelled.[4] Review of this order was never sought.

The Public Service Commission proceeding was terminated as moot when the Village abandoned its intention of installing a telephone system. The Commission expressly stated in its final order that had the Village's proposal been found to involve services for hire, as ITT conceded at the trial of this suit that it did, it would have

---

1. 15 U.S.C. § 2 (Supp.1976).

2. We liberally quote Judge Palmieri's preliminary statement of facts in his Findings of Fact and Conclusions of Law order dated September 11, 1975.

3. F.S. § 364.02(4), F.S. § 364.33.

4. The contract was cancelled on January 28, 1972, after ITT rejected the Village's proposal that it install a portion of the proposed system for those uses which were clearly lawful.

been in violation of Florida law because of the lack of a certificate of public convenience and necessity.

The above is an abbreviated statement of the facts. The district court judge tried this case, heard testimony of live witnesses and by deposition and made factual findings therefrom. After reviewing the record there was ample evidence and testimony on which he could base these findings. They were not clearly erroneous.[5] We also find no error in the legal theories applied.

United properly took their dispute to the Public Service Commission for resolution and even though there might have been an anticompetitive motive the complaint itself was not frivolous or a sham. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). The Public Service Commission is the authority to determine whether the actions herein would be unlawful under Florida law. The Public Service Commission made that and other determinations and they were not appealed. ITT is now estopped from raising any factual matters it failed to raise before the Florida Public Service Commission. See *Marine Terminal v. Rederi Transatlantic*, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970); *Tampa Phosphate R. Co. v. Seaboard Coast Line R. Co.*, 418 F.2d 387 (5th Cir. 1969), *cert. denied*, 397 U.S. 910, 90 S.Ct. 907, 25 L.Ed.2d 90 (1970), *rehearing denied*, 397 U.S. 1030, 90 S.Ct. 1256, 25 L.Ed.2d 543 (1970).

We find that all issues raised are without merit and affirm the judgment of the district court as to both parties.

---

5. F.R.Civ.P., Rule 52(a); *United States v. U. S. Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948), *rehearing denied*, 333 U.S. 869, 68 S.Ct. 788, 92 L.Ed. 1147.

