**Harry S. WENDER, Administrator of the Estate of Chingore Sebastian Moio, Appellant,**

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION, Appellee.**

No. 79–944.

District of Columbia Court of Appeals.

Argued March 12, 1981.

Decided Aug. 27, 1981.

Robert J. Stanford, with whom Gregory A. Cotter, Washington, D. C., was on the brief, for appellant.

Francis J. Prior, Jr., Alexandria, with whom Robert L. Ellis, Arlington, Va., was on the brief, for appellee.

Before NEWMAN, Chief Judge, and MACK and PRYOR, Associate Judges.

NEWMAN, Chief Judge:

Plaintiff/appellant Harry Wender (Wender), administrator C.T.A. of the estate of Chingore Sebastian Moio, contends that the trial court erroneously permitted defendant/appellee United Services Automobile Association, which had previously asserted the attorney-client privilege with respect to certain documents, to waive the privilege immediately prior to commencement of the trial. We address herein the question of whether the assertion of reliance upon the advice of counsel as a material element of the defense constitutes waiver of the attorney-client privilege with respect to the communications upon which the client allegedly relied, and conclude that it does. Because we find further that appellant was unfairly prejudiced by the ruling of the trial court allowing appellee, immediately prior to trial, to waive the privilege it had previously asserted, we reverse and remand for a new trial.

On August 10, 1967, Chingore Sebastian Moio (Moio), travelling westbound on Columbia Road near 18th Street, N.W., swerved to avoid an accident with another car travelling eastbound in the same lane. He instead collided with a second eastbound vehicle travelling in the adjacent lane and driven by one William Miller. William Miller died on August 14, 1967 as a result of injuries sustained in that accident.

Ellen Miller (Miller), William Miller's wife and the executrix of his estate, sued Moio for the wrongful death of her husband. Moio, through his insurer United Services Automobile Association (USAA), engaged in pretrial settlement negotiations. Although Miller was willing to settle within the limits of Moio's $10,000 insurance policy,

she refused USAA's final pretrial settlement offer of $5,000.

In a bifurcated jury trial (the first trial), Miller won a verdict against Moio on liability, and a verdict for $130,000 in damages. Moio died while an unsuccessful appeal in this case was pending. Miller's estate accepted payment from USAA of $10,000 plus interest, with the stipulation that this payment would not bar later claims against the Moio estate, or against USAA to the extent that it was a creditor of the Moio estate.

Moio's will named Raenorris S. Mason as sole beneficiary and executrix of his estate. Ms. Mason failed to qualify as executrix, however. Wender had represented Miller in the above action against Moio. With Miller's consent, he sought to be substituted for Ms. Mason, and was designated to serve in her stead as administrator C.T.A. of the Moio estate. In that capacity he brought the instant action against USAA, alleging that USAA had previously acted "negligently and in bad faith breach of the contract of insurance between defendant USAA and Moio" in refusing to settle the case within the $10,000 policy limit. Wender claimed $180,000 in compensatory and punitive damages. USAA asserted as a defense its own independent evaluation of the case, and its reasonable reliance on the advice of counsel, including the advice of Judge William Stewart who, prior to his appointment as a judge on the Superior Court of the District of Columbia, had represented USAA in its settlement negotiations with Miller.*

In pretrial interrogatories Wender sought to discover the substance and text of all written and oral attorney communications to USAA concerning the first case. USAA declined to provide the matters sought, claiming that the requested information was protected by the attorney-client privilege. Wender asserted no objection to USAA's claim of privilege at that time, but did object when in pretrial conference, held immediately prior to trial, USAA stated its

intention to use at trial some of the material previously withheld from Wender. The trial court allowed use of these materials upon condition that they be made available to Wender. Wender received copies of the documents in question only after the trial had begun, and, he asserts, after he had made his opening statement to the jury.

Following a jury verdict for defendant/appellee USAA, appellant moved for a new trial, contending that the court's handling of the discovery question unduly prejudiced his case. After that motion was denied, he brought this appeal.

[The] purpose [of the attorney-client privilege] is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client. As [the Supreme Court] stated last Term in *Trammel v. United States*, 445 U.S. 40, 51 [100 S.Ct. 906, 912, 63 L.Ed.2d 186] (1980), "The attorney-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in *Fisher v. United States*, 425 U.S. 391, 403 [96 S.Ct. 1569, 1577, 48 L.Ed.2d 39] (1976), [the Court] recognized the purpose of the privilege to be "to encourage clients to make full disclosures to their attorneys." [*Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).]

*Accord, Hunt v. Blackburn*, 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888); *Coastal States Gas Corp. v. Department of Energy*, 199 U.S.App.D.C. 272, 280, 617 F.2d 854, 862 (1980) ("Like all privileges,...the attorney-client privilege is narrowly construed and is limited to those situations in which its purposes will be served.") Thus

---

* Judge Stewart was appointed to the bench prior to trial and while settlement negotiations were still in progress. USAA thereafter relied on the advice of other attorneys in formulating its settlement strategy.

in *Edmund J. Flynn Co. v. LaVay*, D.C. App., 431 A.2d 543 at 551), we stated:

> Testimonial privileges, such as protection for attorney-client confidences, operate as narrow exceptions to the general rule that every person must offer testimony upon all facts relevant to a judicial proceeding. 8 Wigmore, Evidence § 2285 (McNaughton rev. 1961). Intended to promote free exchange between counselor and client during confidential consultations, the privilege properly serves as a shield, not as an offensive tool of litigation. *See id.,* § 2291; *International Telephone & Telegraph Corp. v. United Telephone Co.,* 60 F.R.D. 177, 185 (M.D.Fla. 1973), *aff'd,* 550 F.2d 287 (5th Cir. 1977).

In certain circumstances, where application of the attorney-client privilege would not serve the purpose for which it is intended, courts have deemed the privilege waived. "An important consideration in assessing the issue of waiver is fairness." *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. 926, 929 (N.D.Cal.1976) (citing *Bierman v. Marcus,* 122 F.Supp. 250, 252 (D.N.J. 1954)). *See also Russell v. Curtin Matheson Scientific, Inc.,* 493 F.Supp. 456, 458 (S.D. Tex.1980); *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D.Wash.1975). In *Hearn v. Rhay,* the court reviewed the factors common to those circumstances where courts have disallowed the rules of privilege:

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. . . . [W]here these three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct. [*Id.* at 581.]

A particular circumstance in which courts addressing the issue of waiver of the attorney-client privilege appear unanimously to have concluded that the privilege is waived is where, as here, "the party resisting discovery raises as a defense that which transpired between client and counsel, *or reliance on advice of counsel. . . .*" *Barr Marine Products Co. v. Borg-Warner Corp.,* 84 F.R.D. 631, 635 (E.D.Pa.1979) (emphasis added). "Where . . . a party asserts as an essential element of his defense reliance upon the advice of counsel, . . . the party waives the attorney-client privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which counsel's advice was sought." *Panter v. Marshall Field & Co.,* 80 F.R.D. 718, 721 (N.D.Ill.1978). *See also Hunt v. Blackburn, supra* 128 U.S. at 470–71, 95 S.Ct. at 127; *Russell v. Curtin Matheson Scientific, Inc., supra* at 458; *Pitney-Bowes, Inc. v. Mestre,* 86 F.R.D. 444, 447 (S.D.Fla.1980); *Handgards, Inc. v. Johnson & Johnson, supra* at 929; *Garfinkle v. Arcata National Corp.,* 64 F.R.D. 688, 689 (S.D.N.Y.1974). The instant case is illustrative. By its affirmative defense of reliance on the advice of counsel, USAA put the protected information—communications between USAA and its legal representatives—at issue, and made that information relevant to the case. It affirmatively asserted the privilege as a justification for its refusal to comply with Wender's discovery request. Application of the privilege denied Wender access to information vital to the preparation of his case.

We conclude that it would be unfair, without furthering the purpose for which it was intended, to sustain application of the attorney-client privilege under such circumstances. We therefore hold that USAA, by asserting its reliance on counsel as a material element of its defense, waived the attorney-client privilege in this lawsuit.

Wender did not protest USAA's original assertion of the attorney-client privilege during the discovery stage of the case. He did object, though, when USAA announced in pretrial conference its intention to introduce into evidence and rely upon certain of the documents that Wender had unsuccessfully sought to discover. The trial court overruled Wender's objection upon condition that USAA make available to Wender

all the documents in question. It is undisputed that a sizeable number of documents was involved.

Ruling on Wender's post-verdict motion for a mistrial, the trial court found first, that "[p]laintiff's lack of diligence in challenging defendant's assertion of privilege cannot now be used as a basis for obtaining a new trial;" and second, that "[w]hatever prejudice there was to plaintiff in being unable to review the materials until shortly before trial was minimal," because the plaintiff/appellant had in fact utilized a number of the documents in question during the case. We disagree. Appellee misused the attorney-client privilege as "an offensive tool of litigation," rather than as "a shield." *See Edmund J. Flynn Co. v. LaVay, supra* at 551.

In the *Flynn* case, we addressed the question of whether a party may dictate the limits of the attorney-client privilege. The defendants had refused to make pretrial discovery of certain documents, asserting the attorney-client privilege, but then at trial introduced one of the previously withheld documents over the plaintiff's objection. This, we concluded, was impermissible. Although our holding was limited to the proposition that, "[w]here a party authorizes the partial disclosure of materials otherwise subject to a valid claim of attorney-client privilege, the [entire] privilege must be treated as waived," *id.*, we stated also: "Discovery of assertedly privileged material cannot be circumvented by delaying the first waiver of the privilege until a strategically advantageous stage of a trial." *Id.* This is precisely what appellee in the instant case was permitted to do.

Nor was the condition imposed by the trial court, that the documents at that time be turned over to appellant, adequately curative of the prejudice suffered by appellant. In *Shelak v. White Motor Co.*, 581 F.2d 1155 (5th Cir. 1978), a case arising from a vehicular accident, because of the plaintiff's earlier incomplete answer to an interrogatory, the defendant only learned on the eve of trial of the plaintiff's contention that certain health problems were causally related to the accident, and of the plaintiff's intention to call a particular doctor to testify. The district court denied the defendant's motion to exclude such evidence. The circuit court reversed and remanded the case for retrial on the issue of damages, stating:

Plaintiff's disregard for the federal rules of discovery in this area created a "trial by ambush" which those rules are designed to prevent. The rules are designed to narrow and clarify the issues and to give the parties mutual knowledge of all relevant facts, thereby preventing surprise. *Hickman v. Taylor*, 329 U.S. 495 [67 S.Ct. 385, 91 L.Ed. 451] (1947). In view of the delay between the time the complaint was filed and the trial, the plaintiff's argument that he was unable earlier to find a doctor who could connect the heart attack with the accident is not persuasive. . . . [I]f discovery has any purpose, plaintiff's opponent was entitled, upon the unveiling of the heart attack contention, to a reasonable opportunity to prepare to defend against it. If the trial judge was not disposed to deny the plaintiff the right to asset this eleventh hour contention, the only reasonable solution would have been to grant a sufficient delay to permit the defendant his right to prepare.

Of course, it may well be possible in many cases for able counsel on an overnight basis to prepare and defend against last-minute claims by his adversary. Certainly, that sort of emergency litigation which could degenerate into "quick-draw hip-shooting" is precisely what the discovery rules were designed to prevent. Under a holding approving the initial presentation of a principal claim and theory of recovery at the eleventh hour, as we find in this case, the discovery rules would serve as no inducement to a candid and orderly revelation of the claims, defenses, and facts upon which the issues would ultimately be presented. [*Id.* at 1159 (footnote omitted).]

*See also Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978) ("The aim of these liberal discovery rules is to 'make a trial

less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent' ") (quoting *United States v. Procter & Gamble Corp.*, 356 U.S. 677, 683, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958)). *Cf. Engl v. Aetna Life Insurance Co.*, 139 F.2d 469 (2d Cir. 1943) (where plaintiff asserted the physician-patient privilege during pretrial discovery, she could not, by an assertion that she might at trial waive her privilege and produce sufficient medical testimony to create a *prima facie* case, overcome summary judgment for the defendant); . *accord*, 4 Moore's Federal Practice ¶ 26.60[1], at 26-227 & n.4 (2d ed. 1976).

On this record we cannot say that the trial court's erroneous rulings were harmless, and thus we reverse and remand for a new trial.

*Reversed.*