Satoshi NAKAJIMA, et al., Plaintiffs,

v.

GENERAL MOTORS CORPORATION, Defendant.

Civ. A. No. 90–1624 SSH.

United States District Court, District of Columbia.

July 15, 1994.

Joseph H. Koonz, Jr., Patrick M. Regan, Koonz, McKenney, Johnson & Regan, Washington, DC, for plaintiffs.

William D. Evans, Graham & Jones, Washington, DC, for defendant.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendant's motion to exclude other incidents and to dismiss the punitive damages claim, and plaintiffs' motion to strike defendant's motion; defendant's motion to bifurcate the liability and damages issues; plaintiffs' motion to compel the deposition testimony of Donald McCandless; and defendant's motion to exclude the expert testimony of Philip Bussey and Richard Lurito.[1] Also before the Court are the

---

1. Also pending are defendant's motion to exclude the videotape of the "kick test" and related evidence, defendant's motion to exclude photographs of the accident site, defendant's motion to exclude certain photographs of Toshie Nakajima's injuries, defendant's motion to exclude the testimony of Hartford Buckel regarding the development of Urban Mass Transportation Administration's specifications, and defendant's motion to exclude the testimony of James Fourcade and Michael Cowger on post-accident investigations or testing. Because resolution of these motions depends on questions of foundation, relevancy, and potential prejudice, the Court defers consideration of these motions until trial. *See In re Air Crash Disaster at Sioux City, Iowa,* 1991 WL 279284, 1991 U.S.Dist. LEXIS 18638 (N.D.Ill. filed Dec. 26, 1991) ("Rulings on admissibility of evidence normally should be deferred until trial, so that questions of foundation, relevancy, and potential prejudice may be resolved in the proper context.").

The Court also defers ruling on plaintiffs' motion for an order drawing an adverse inference against defendant, because this involves a jury instruction issue.

responses and replies to the foregoing motions. The Court addresses each of these issues in turn.

### Analysis

1. *Admissibility of Evidence of Other Incidents*

██ Defendant moves to exclude evidence of 52 other incidents in which the rear doors of RTS–II coaches inadvertently opened and passengers were injured.[2] Prior similar incidents may be admissible to show the dangerous nature of a specific condition or a defendant's knowledge of a dangerous condition. *E.g., Exum v. General Elec. Co.,* 819 F.2d 1158, 1162 (D.C.Cir.1987); *Brooks v. Chrysler Corp.,* 786 F.2d 1191, 1195 (D.C.Cir.), *cert. denied,* 479 U.S. 853, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986); *Edwards v. Consolidated Rail Corp.,* 567 F.Supp. 1087, 1105–06 (D.D.C.1983), *aff'd,* 733 F.2d 966 (D.C.Cir.1984), *cert. denied,* 469 U.S. 883, 105 S.Ct. 252, 83 L.Ed.2d 189 (1984). This rule is no different in product liability cases. To be admissible, the other incidents must be "substantially similar" to the case at bar. *Id.* at 1158–59. The degree of substantial similarity required depends on the purpose for which the evidence is offered: a high degree of similarity is essential if offered to prove the dangerousness of a condition, whereas the requirement is somewhat relaxed when offered to prove knowledge thereof. *Id.* The burden is on the party seeking admission to prove that substantially similar circumstances exist. *Edwards,* 567 F.Supp. at 1106 n. 29.

Plaintiffs wish to use the "other incidents" primarily to prove that defendant was on notice of the dangerousness of the product design.[3] Even under the relaxed substantial similarity requirement, the Court finds that all 52 prior incidents lack sufficient similarity to the March 20, 1990, incident to be admissible. First, in 33 of the 52 prior incidents, a single motor was used in the rear door system, in contrast to the dual motor used in the case at bar. The Court finds that the differences between the two types of motor systems are substantial. "In the dual motor system, one motor operates each door, while on the single motor system, the doors are connected by a mechanical linkage which is operated by the single motor." National Highway Traffic Safety Administration Engineering Analysis Closing Report, at 1 ("NHTSA EA Closing Report").[4] The deposition testimony of the parties' experts describes other significant differences between the two systems. The differences between the motor systems fatally undermine the probative value of the single-motor incidents.[5]

2. Although plaintiffs raise the issue of the admissibility of the November 10, 1992, North Carolina incident, the Court defers ruling thereon. Defendant has not moved to exclude it, and the present record does not provide sufficient information on which to determine whether the incident was "substantially similar" to the incident involving plaintiffs, and, if so, whether it otherwise may be admissible.

3. Plaintiffs also seek to use the other incidents to prove: (1) the existence of a condition—the absence of a positive locking mechanism; (2) a causal link between the condition and plaintiffs' injuries; and (3) dangerousness of the condition. Plaintiffs' Opposition to Defendant's Motion To Exclude Other Incidents, at 10 n. 3.

4. The NHTSA EA Closing Report may be considered by the Court as a public report under Fed. R.Evid. 803(8)(C). *See In re Multi–Piece Rims Products Liability Litigation,* 545 F.Supp. 149, 150–51 (W.D.Mo.1982) (admitting NHTSA letters in the nature of evaluative reports). Plaintiffs contend that the document is not "trustworthy" and urge the Court not to consider this report in determining whether the other incidents are "substantially similar." "Rule 803(8)(C) 'assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present.' Fed.R.Evid. 803 advisory committee note. 'The burden is on the party disputing admissibility to prove the factual finding to be untrustworthy.'" *In re Korean Air Lines Disaster of September 1, 1983,* 932 F.2d 1475, 1482 (D.C.Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). Although the NHTSA did not consider all prior incidents involving passenger ejections from defendant's RTS–II rear door systems, the Court finds the Report sufficiently trustworthy. Questions about the methodology by which prior incidents were selected as part of the investigation goes to its weight rather than its admissibility.

5. Plaintiffs contend that the differences between a single motor system and dual motor system are irrelevant because the primary design defect they allege—the absence of a positive locking mechanism—is "present" in both motors. The Court questions, however, whether "substantial similarity" of circumstances can be proven by the

Second, 46 of the 52 "other incidents" occurred prior to two design modifications implemented in 1984 and 1985: "The air pressure to the door was increased, to hold them more tightly closed, and a speed sensor was installed to terminate all electrical power to the rear door operating system at speeds in excess of 2 mph." NHTSA EA Closing Report, at 4. Although the NHTSA conclusions may be somewhat skewed because all 52 incidents were not submitted for evaluation, the inescapable conclusion is that the 1984 and 1985 retrofits substantially reduced the likelihood of inadvertent rear door openings. Therefore, the nonretrofitted coaches are not "substantially similar" to the retrofitted bus involved in the March 20, 1990, incident.

Third, and most importantly, the bus operator had made significant maintenance alterations to the door motor in the instant case, which makes it substantially different from the 52 other incidents. Following the March 20 incident, the aluminum casing of one of the rear door motors was found to be fractured. The NHTSA Engineering Analysis revealed that:

> The door motor in this case had been overhauled by the bus operator and an incorrect cushioning spring was installed. This spring fractured and pieces of the spring were found inside the failed motor. Wear patterns indicated that the motor had been operating for an extended period of time with the spring loose inside the cylinder. Additionally, improper welding and reinforcement had been performed on the drive arm, contrary to the service instructions provided by the manufacturer—Vapor.

NHTSA EA Closing Report, at 4. *See also* Plaintiffs' Pretrial Statement, at 13–16. For

the foregoing reasons, defendant's motion to exclude evidence of other incidents is granted.[6]

*2. Punitive Damages*

▮▮▮ Consequently, defendant moves to dismiss the punitive damages claims.[7] Because the Court considers matters outside of the pleadings, the Court treats the motion as one for summary judgment on this issue. Fed.R.Civ.P. 12(b). Punitive damages are not favored under District of Columbia law. *BWX Electronics, Inc. v. Control Data Corp.,* 929 F.2d 707, 712 (D.C.Cir.1991). They may be awarded only if plaintiffs prove, by at least a preponderance of the evidence, that defendant's conduct is willful and outrageous, exhibits recklessness and willful disregard of the rights of others, or is aggravated by " 'evil motive, actual malice, or deliberate violence or oppression.' "[8] *LeSane v. Hillenbrand Indus., Inc.,* 791 F.Supp. 871, 873 (D.D.C.1992) (quoting *BWX Electronics, Inc.,* 929 F.2d at 712); *Raynor v. Richardson–Merrell, Inc.,* 643 F.Supp. 238, 245 (D.D.C. 1986). Gross negligence is not enough to support a claim. *LeSane,* 791 F.Supp. at 873. Additionally, the conduct supporting the claim must be "clearly established." *Raynor,* 643 F.Supp. at 245 (citing *Darrin v. Capital Transit Co.,* 90 A.2d 823, 825 (D.C.Mun.App.1952)).

Plaintiffs' punitive damages claims are premised on the theory that defendant acted with willful and wanton disregard for the safety of RTS–II passengers. Plaintiffs' Pretrial Statement, at 8–10. Viewing the evidence in the light most favorable to plaintiffs, the Court finds that no reasonable jury could make this finding by a preponderance of the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505,

---

*absence* of similar circumstances. Even considering this similarity, however, the Court reaches the same conclusion.

**6.** The Court also would exclude the "other incidents" because their probative value, which is diminished by the differences already articulated, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Fed.R.Evid. 403.

**7.** Finding good cause for the late filing of this motion and no unfair prejudice to plaintiffs, the

Court denies plaintiffs' motion to strike defendant's motion.

**8.** Because the Court finds that the evidence plaintiffs rely on does not meet the preponderance standard, the Court does not reach the issue of whether a higher standard of proof should be required in products liability cases. *Cf. Raynor v. Richardson–Merrell, Inc.,* 643 F.Supp. 238, 245 (D.D.C.1986) (applying the clear and convincing standard of proof in products liability case).

2511, 91 L.Ed.2d 202 (1986) (noting that the standard for summary judgment "mirrors the standard for a directed verdict"). Therefore, defendant's motion for summary judgment on the punitive damages claims is granted.

*3. Bifurcation of Trial*

■ Defendant also moves for bifurcation of the liability and damages phases of the trial in this case. Rule 42(b) provides that:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Fed.R.Civ. 42(b). The Court finds that the issues presented in this case do not warrant bifurcation. Considerations of convenience to the parties and witnesses, expedition, and judicial economy weigh against bifurcation. In particular, exclusion of the evidence of other incidents and the punitive damages claims reduces many of the prejudice and complexity issues of concern to defendant. Accordingly, defendant's motion is denied.

*4. Attorney–Client Privilege: Testimony of Donald McCandless*

■ Plaintiffs move to compel certain testimony from McCandless, a former Coach Field Service Representative for defendant, regarding the substance of conversations that took place at a 1990 meeting of defendant's legal counsel and McCandless in Pontiac, Michigan ("the Pontiac meeting"). Defendant objects on the grounds that the conversations are protected by attorney-client privilege, while plaintiffs contend the privilege was waived by McCandless's presence at the meeting.

In a diversity case involving claims and defenses under state law, state law governs the issue of attorney-client privilege. Fed.

R.Evid. 501. District of Columbia courts have emphasized that the scope of the privilege is determined by the purposes which it is intended to serve and is narrowly construed. *Wender v. United Servs. Auto. Ass'n,* 434 A.2d 1372, 1373–74 (D.C.1981). Although District of Columbia law has not addressed the issue of whether the privilege extends to former employees of a client corporation, the development of the privilege has followed Supreme Court precedent. *See, e.g., id.*

The Supreme Court has held that a corporation's attorneys' conversations with corporate employees are privileged if:

[1] [t]he communications concern[ ] matters within the scope of the employees' corporate duties, [2] the employees themselves [are] sufficiently aware that they [are] being questioned in order that the corporation [can] obtain legal advice ... and [3] the communications [are] considered "... confidential" when made, and have been kept confidential by the company.

*Upjohn Co. v. United States,* 449 U.S. 383, 394–95, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). In the instant case, although some of the communications at the Pontiac meeting may have included matters within the scope of McCandless's corporate duties when he was employed by defendant (specifically, McCandless's knowledge about prior inadvertent rear door openings), the meeting also included discussions about the March 20, 1990, incident. McCandless's investigation of this incident—three years after he left defendant's employment—was not done as an employee for defendant.[9] Additionally, defendant has not alleged that McCandless was aware that he was being questioned at the meeting in order for defendant to obtain legal advice or that the communications were considered confidential when made. Therefore, the attorney-client privilege does not protect communications made at the Pontiac meeting.[10] Accordingly, plaintiffs' motion to

**9.** The record indicates that McCandless became involved in the investigation of the March 20, 1990, incident after being contacted by an employee of the former defendant Washington Met-

ropolitan Area Transit Authority, rather than by the sole remaining defendant.

**10.** Defendant's contention that the communications are not discoverable because they are inad-

compel further deposition testimony is granted.[11]

### 5. *Admissibility of Testimony of Philip Bussey and Richard Lurito*

 Bussey, a vocational rehabilitation specialist, and Lurito, a consulting economist, are expected to testify on the issue of Toshie Nakajima's future damages, which consists of lost future earnings and future medical expenses. Defendant moves to exclude their testimony pursuant to Rules 401 and 702 of the Federal Rules of Evidence, on the grounds that their opinions are based on the false assumption that Nakajima will live and work in the District of Columbia area, when in fact she has always lived, and will continue to live, in Japan.

 "When properly utilized, [economic and statistical] expert testimony can provide a rational basis for the jury's determination of an individual's future earnings, and can thus minimize the risk of jury speculation...." *Hughes v. Pender*, 391 A.2d 259, 263 (D.C.1978). Where, as here, the expert's opinion is based on an incorrect assumption about the country in which a plaintiff will reside, the testimony should not be permitted because it fails to serve its purpose of aiding the trier of fact in its determination of lost future earnings. *See Wheeler Tarpeh–Doe v. United States*, 771 F.Supp. 427, 455 (D.D.C. 1991). *Cf. Dutcher v. United States*, 736 F.Supp. 1142, 1145 (D.D.C.), *aff'd*, 923 F.2d 200 (D.C.Cir.1990).

Additionally, plaintiff's contention that the use of United States' statistical and economic data is necessary because comparable Japanese data is not available is not supported by the record. A review of Bussey's deposition and the Year Book of Labour Statistics, published by the Japanese Ministry of Labour, shows that adequate Japanese data on the factors considered under District of Colum-

bia law, *see Hughes*, 391 A.2d at 263, exists. Therefore, the testimony of Bussey and Lurito, insofar as it is based on a presumption of Nakajima's future residence in the United States, is excluded.

### *Conclusion*

For the foregoing reasons, defendant's motion to exclude other incidents and for summary judgment on the punitive damages claims is granted, plaintiffs' motion to strike defendants' motion is denied, defendant's motion to bifurcate the liability and damages phases of the trial is denied, plaintiffs' motion to compel the deposition testimony of Donald McCandless is granted, and defendant's motion to exclude the testimony of Philip Bussey and Richard Lurito is granted.

---

missible hearsay is without merit. Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). "Thus hearsay, while inadmissible itself, may suggest testimony which properly may be proved" and is therefore discoverable. Fed. R.Civ.P. 26 advisory committee's note.

**11.** McCandless retained Kirkland & Ellis as counsel on April 14, 1993, to represent him at the April 15, 1993, deposition. Of course, any communications from April 14 onward between McCandless and his counsel in preparation for the deposition are protected by the attorney-client privilege and are not discoverable.