**Carrie ADAMS, Appellant,**

v.

**Florence Diane FRANKLIN, et al., Appellees.**

**No. 05–CV–233.**

District of Columbia Court of Appeals.

Argued June 28, 2006.

Decided May 10, 2007.

Roderic D. Williams and Sheryl S. Viot, for appellant.

Spencer K. Stephens, for appellees Florence Diane Franklin and Maximum Developers Investors.

Steven T. Cain, for appellee Remax 100.

Richard C. Daniels, with whom Lani L. Daniels, College Park, MD, was on the brief, for appellee Benefit Funding Corporation.

Before WASHINGTON, Chief Judge, FISHER, Associate Judge, and BELSON, Senior Judge.

WASHINGTON, Chief Judge:

█ Invoking the attorney-client privilege and the broader obligation of client-lawyer confidentiality imposed by Rule 1.6 of the Rules of Professional Conduct (2006),[1] appellant Carrie Adams appeals the trial court's order compelling her former attorney, Leonard Koenick, to subject himself to a deposition by appellees. We affirm.[2]

1. Since this case has been briefed and argued, a new version of the Rules of Professional Conduct went into effect on February 1, 2007. This opinion cites to the Rules of Professional Conduct as they appeared at the time the case was briefed and argued.

2. This court is vested with jurisdiction over this interlocutory appeal under the *Perlman*

## I.

In 2004, appellant brought suit in Superior Court against the several appellees alleging that they fraudulently deceived her as to the true sale value of her real property and induced her to sell the property at a price substantially below market value. Appellees suggest that appellant's claims are barred by the appropriate three-year statute of limitations. Specifically, appellees claim that appellant was aware of the underlying nature of her suit since August 1999. To support this defense, appellees note a demand letter, which is dated August 16, 1999, purportedly authored and sent by appellant's former attorney, Leonard Koenick, to many of the same parties in the present suit. In order to establish the authenticity and appellant's authorization of the demand letter, appellees sought to depose Mr. Koenick on this subject matter. Appellees subpoenaed Mr. Koenick and directed him to produce: "All documents and/or things that you have in your possession and/or control and which relate to and/or refer to [appellant and/or the property], excepting for materials that are protected by the attorney-client privilege...." Mr. Koenick appeared for the deposition, but was instructed by appellant's current attorney not to answer *any* questions due to attorney-client privilege. Specifically, appellant stated that Rule 1.6 of the District of Columbia Rules of Professional Conduct creates an almost unequivocal privilege precluding her former attorney from being deposed on any matter relating to her former representation. The trial court disagreed, and held that the information being sought from Mr. Koenick-"(1) whether the letter is authentic ...; (2) whether Mr. Koenick sent the letter or caused it to be sent; (3) whether Mr. Koenick represented plaintiff in August 1999; and (4) where Mr. Koenick learned of the information contained in the letter"—is not protected by any privilege.[3]

## II.

■ Rule 1.6 of the District of Columbia Rules of Professional Conduct states in relevant part that, "[e]xcept when permitted under paragraph (c) or (d), a lawyer shall not knowingly: (1) Reveal a confidence or secret of the lawyer's client...." As the Rule further elaborates, " '[c]onfidence' refers to information protected by the attorney-client privilege under applicable law, and 'secret' refers to other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client." These defini-

---

doctrine. *Walter E. Lynch & Co., Inc. v. Fuisz*, 862 A.2d 929, 931–32 (D.C.2004) (citing *Perlman v. United States*, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918) (concluding that the *Perlman* doctrine vests this court with jurisdiction where appellant appeals from "a discovery order directed at a disinterested third party ... because the third party presumably lacks a sufficient stake in the proceeding to risk contempt by refusing compliance")).

3. This case has an interesting, and somewhat confusing procedural posture. After Mr. Koenick's initial refusal to answer any questions during the deposition, appellees sought and were granted a motion to compel Mr. Koenick's deposition. Appellant subsequently filed a notice of appeal and an emergency motion to stay the deposition with this court. We granted an administrative stay and remanded the matter to the trial court for findings of fact and conclusions of law regarding whether Mr. Koenick can or cannot be compelled to answer questions during the deposition. The trial court then held a hearing on the proposed deposition, and issued written findings of fact and conclusions of law affirming its previous order to compel. After vacating our previous administrative stay of the deposition and denying appellant's motion for emergency stay, we issued a briefing order to all parties. Oral argument and this opinion followed.

tions and comment [6] to Rule 1.6 make it clear than the lawyer's ethical duty to preserve a client's confidences and secrets is broader that the attorney-client privilege. D.C. RULE OF PROF'L CONDUCT R. 1.6(b), cmt. 6. "The lawyer's obligation to preserve the client's confidences and secrets continues after termination of the lawyer's employment." D.C. RULE OF PROF'L CONDUCT R. 1.6(f). "A lawyer may[, however,] use or reveal client confidences or secrets . . . [w]hen permitted by these Rules or required by law or court order." D.C. RULE OF PROF'L CONDUCT R. 1.6(d)(2)(A).

Rule 1.6 does not, however, act as an unequivocal shield to disclosing the sought-after information. There are situations where a lawyer may disclose privileged information without client approval. Rule 1.6(d)(2)(A) specifically allows, and in fact mandates, such disclosure of confidences or secrets when "required by law or court order." Admittedly, there is some inherent confusion in the drafting of subsection (d)(2)(A), specifically in the drafter's use of the word "may." D.C. RULE OF PROF'L CONDUCT R. 1.6(d)(2)(A) (stating "[a] lawyer may use or reveal client confidences or secrets . . . [w]hen permitted by these Rules or required by law or court order"). The use of the word "may" in subsection (d)(2)(A) could lead one to believe that there is an opportunity to exercise discretion and choice. Such a reading, however, makes little sense given the use of the phrase "when . . . *required* by law or court order" in the same subsection of the rule. *Id.* (Emphasis added.). There is nothing discretionary about the term "required," and use of this word in the subsection clearly evidences a mandatory obligation to disclose.[4] Any other reading would be illogical and inconsistent with established court practices: we do not allow the discretion of an individual attorney to supersede the mandate of the trial court.

Other jurisdictions and scholars refer to provisions such as Rule 1.6(d)(2)(A) as "required by law" exceptions to the rule of confidentiality. *See Allen County Bar Ass'n v. Williams*, 95 Ohio St.3d 160, 766 N.E.2d 973 (2002); *In re Marriage of Decker*, 153 Ill.2d 298, 180 Ill.Dec. 17, 606 N.E.2d 1094 (1992); G. HAZARD & W. HODES, THE LAW OF LAWYERING § 9.25 (Supp. 2004–2). Both these courts and Professor Hazard note that it would be "inconceivable for a legal system which has just ordered an attorney to disclose information to not allow that information divulged pursuant to a code of ethics." *Decker, supra,* 180 Ill.Dec. 17, 606 N.E.2d at 1104 (paraphrasing Professor Hazard's analysis of the "required by law" exception). As the Ohio Supreme Court noted, this sentiment is echoed in RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 63, cmt. a (2000), where it states, "[a] lawyer's general legal duty . . . not to use or disclose confidential client information . . . is superseded when the law specifically requires such use or disclosure." *Allen County Bar Ass'n, supra,* 766 N.E.2d at 975. As Professor Hazard succinctly said, "[t]he essence of the matter is that every case in which a lawyer is 'required by law' to disclose information is also a case in which she cannot be prohibited from doing so." G. HAZARD & W. HODES, THE LAW OF LAWYERING § 9.25. He clearly explained, "if a judge in open court orders a lawyer to provide information about a client, having rejected a claim of privilege, the judge's order is 'law,' and must be obeyed. The lawyer's testimony is required by law." *Id.*

---

4. Furthermore, no other provision in the Rules can be cited as an independent basis to allow an attorney to willfully disobey a court order.

Although the obligation to obey a court order is clear, our rules also admonish a lawyer to make "every reasonable effort" to preserve the option to appeal. Cmt. (26) to Rule 1.6 explains:

> The lawyer may comply with the final orders of a court or other tribunal of competent jurisdiction requiring the lawyer to give information about the client. But a lawyer ordered by a court to disclose client confidences or secrets should not comply with the order until the lawyer has personally made every reasonable effort to appeal the order or has notified the client of the order and given the client the opportunity to challenge it.

*See* D.C. Bar Legal Ethics Committee Opinion 214, *Disclosure to Internal Revenue Service of Name of Client Paying Fee in Cash* (Sept. 18, 1990) ("In light of our prior decisions and Comment 26, we conclude that the law firm here may comply with a final judicial order enforcing an IRS summons without seeking appellate review of that order, but only after giving its client notice of the court's order and a reasonable opportunity to seek review independently of the firm."). This was the rule followed in this jurisdiction even before Rule 1.6 and comment [26] were adopted. *See* D.C. Bar Legal Ethics Committee Opinion 180, *Disclosure of Client Confidences and Secrets to Investigating Authorities* (March 17, 1987) ("if Attorney is ordered by a court to disclose the client information, he must not make disclosure until he has given the client an opportunity to appeal the order to a higher tribunal";

interpreting DR 4–101, the predecessor to Rule 1.6). Because Mr. Koenick fulfilled this obligation, this appeal by his former client is now before us.[5]

Although a court order to compel testimony vitiates Rule 1.6, there still exists the independent basis found in the attorney-client privilege to preclude compelled disclosure of privileged communications. "The attorney-client privilege is one of the oldest recognized privileges for confidential communications, and privileged communications are traditionally deemed worthy of maximum legal protection." *In re Public Defender Serv.*, 831 A.2d 890, 900 (D.C.2003) (citations and quotation marks omitted); *see also Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The purpose of the privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Wender v. United Servs. Auto. Ass'n*, 434 A.2d 1372, 1373 (D.C.1981) (internal citation omitted). But the privilege should be narrowly construed to protect only the purposes which it serves. *Id.* at 1373–74. "Thus the privilege applies only in the following circumstances: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be

---

**5.** We agree with the opinions of the District of Columbia Bar Legal Ethics Committee concluding that an attorney is not required to suffer an adjudication of contempt in order to create or preserve the option of appellate review. *See* D.C. Bar Legal Ethics Committee Opinion 288, *Compliance with Subpoena from Congressional Subcommittee to Produce Lawyer's Files Containing Client Confidences or Secrets* (Feb. 16, 1999); D.C. Bar Legal Ethics Committee Opinion 83, *Duty to Protect Confidences of Former Client In Face of Potential Court Order to Compel Testimony or Production of Documents* ("the attorney is not obliged to run the risk of being held in contempt of court because of the client's desire that confidences and secrets not be disclosed;" interpreting DR 4–101).

waived." *Jones v. United States*, 828 A.2d 169, 175 (D.C.2003) (citation omitted).

However, this privilege is not absolute. "In certain circumstances, where application of the attorney-client privilege would not serve the purpose for which it is intended, courts have deemed the privilege waived." *Wender, supra,* 434 A.2d at 1374. "An important consideration in assessing the issue of waiver is fairness." *Id.* (citation omitted). "The privilege which attaches to a confidential communication between attorney and client is waived when the substance of that communication is related to a nonprivileged party." *Bundy v. United States*, 422 A.2d 765, 767 n. 4 (D.C.1980). When a party authorizes disclosure of otherwise privileged materials, the privilege must be treated as waived. *See Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 551 (D.C. 1981). "Once a party has waived the attorney-client privilege, the other party should receive access to the remaining relevant withheld materials." *Id.*

Appellant argues, in essence, that the ethical obligation to preserve client confidences and secrets expands the scope of her evidentiary privilege. This is clearly wrong. In the instant case, the trial court issued an order compelling Mr.

Koenick to submit to the deposition. Because of the trial court's order, Rule 1.6 is no bar to Mr. Koenick's being deposed. The only potential obstacle to the sought-after deposition is the attorney-client privilege.[6]

In its Findings of Fact and Conclusions of Law, dated April 11, 2002, the trial court specifically identified four categories of information being sought by appellees in their deposition of Mr. Koenick: "(1) whether the letter is authentic—whether Mr. Koenick authored the letter; (2) whether Mr. Koenick sent the letter or caused it to be sent; (3) whether Mr. Koenick represented plaintiff in August 1999; and (4) where Mr. Koenick learned of the information contained in the letter." As the trial court correctly stated, there is nothing privileged about these four discrete topics of questioning. Specifically, topics (1) through (3) are not communications between Mr. Koenick and appellant, and are not entitled to the protection of any privilege. With respect to the fourth topic—where Mr. Koenick learned of the information—we similarly do not find protection by the attorney-client privilege. The attorney-client privilege protects only communications from a client to an attor-

---

6. Although Rule 1.6 and the rule protecting attorney-client confidential communication seemingly prohibits similar conduct, the two rules have vastly different legal implications and applications. The primary distinction between the two rules is that the rule of evidence governs admissibility in a trial court; the rule of professional conduct, on the other hand, governs only disciplinary actions of the D.C. Bar. In creating such a distinction between the rules, we agree with the reasoning of the Michigan Supreme Court that "[t]he admissibility of evidence in a court of law ... is normally determined by reference to relevant constitutional and statutory provisions, applicable court rules and pertinent common-law doctrines. Codes of professional conduct play no part in such decisions." *People v.* *Green*, 405 Mich. 273, 274 N.W.2d 448, 454 (1979); *see also State v. McCarthy*, 819 A.2d 335, 341 n. 7 (Me.2003) (quoting *Green, supra,* 274 N.W.2d at 454, for the same proposition); *State v. Decker*, 138 N.H. 432, 641 A.2d 226, 230 (1994) (same); *Suarez v. State*, 481 So.2d 1201, 1206 (Fla.1985) (same); *State v. Norgaard*, 201 Mont. 165, 653 P.2d 483, 487 (1982) (same); *State v. Morgan*, 231 Kan. 472, 646 P.2d 1064, 1069 (1982). The Rules of Professional Conduct are not rules of evidence and do not have the same force of substantive law as a rule of evidence. Comment [5] to Rule 1.6 clearly explains that "[t]his rule is not intended to govern or affect judicial application of the attorney-client privilege...."

ney that are, at the time they are communicated, intended to be confidential. There are two broad possibilities for the source of Mr. Koenick's information: (1) appellant herself told him, or (2) someone or something else did. As an initial matter, if the source were anything but appellant, then there is no client communication, and therefore there is no privilege. If, however, appellant was the source, then it is reasonable to assume that such information was relayed to Mr. Koenick with the intent that it be used as the basis of the demand letter. As appellant knew and intended that the information be published, it cannot be said to have been "confidential" *ab initio*. In the event that the original communication was in fact intended to be "confidential," we find that whatever privilege may have protected its disclosure has since been waived by the transmission of the demand letter to third parties not covered by the attorney-client privilege. Because the discrete topics of appellees' questioning do not implicate any privileged communications, we find that Mr. Koenick must subject himself to the deposition and answer any question reasonably within the scope of the identified categories.

For the foregoing reasons, the decision of the trial court is

*Affirmed.*